## Sarah Bicknell *versus* John B. Dorion *et al.*

If, in a civil action against two, a verdict is rendered in favor of one and against the other, a new trial may be granted as to the latter, without disturbing the verdict so far as it regards the former.

If an action is commenced by two persons in the name of one of them, upon reasonable and probable cause, and the defendant is arrested and imprisoned, and the action is entered in court, and depositions are taken which show manifestly that *the defendant has a good defence, and that the plaintiff has no reasonable cause of action*, and still the action is not discontinued nor the defendant discharged from imprisonment, these facts do not furnish the defendant with a ground of action against the two persons for a malicious suit, for the omission to discontinue the action and discharge the defendant is the neglect of the plaintiff alone.

An action cannot be maintained against an attorney at law for bringing a civil action, unless he commenced it without the authority of the party in whose name it was sued, or unless there was a conspiracy between them to bring a groundless suit, the attorney knowing it to be groundless and commenced without any intention or expectation of maintaining it.

THIS was an action of the case. The first count alleges that the defendants, J. B. Dorion, T. Fuller, I. Winslow, and two others, on May 22, 1832, by a conspiracy between them first thereof had to oppress, impoverish, aggrieve and disgrace the plaintiff, maliciously and without any probable cause, sued out of the Court of Common Pleas a writ of trover in the name of Dorion against the plaintiff, and caused her to be arrested upon the writ, and, for want of sufficient bail, caused her to be imprisoned; that the action was entered at the July term following, and continued until the next October term, when it was nonsuited, for want of the appearance of Dorion to prosecute the same, and that the same was fully determined and ended.

The second count, which was filed under leave to amend, alleges that the defendants, on May 22, 1832, prosecuted a writ of trover in the name of Dorion, returnable at July term 1832, of the Court of Common Pleas, against the plaintiff, and caused the plaintiff to be arrested thereon, and, for want of sufficient bail, removed from her dwellinghouse, and with circumstances calculated to cause unto her the utmost mortification, public reproach and disgrace, to be committed to jail, where she was detained sixty days; and afterwards at the Court of Common Pleas, to which the writ was returnable

and wherein the action was entered, the action was continued until the next ensuing term, in October 1832, when Dorion, for want of his appearance to prosecute the action, became nonsuit ; and the plaintiff being wholly innocent of the wrong in that action alleged against her, was duly discharged therefrom, and the action was fully ended and determined ; and whereas a certain process of law was instituted on July 18, 1832, for taking certain depositions, by means of which it became known and was clearly manifested to the defendants, that there was no lawful or probable cause of action against the plaintiff on behalf of Dorion, yet the defendants, further contriving and maliciously intending to oppress and unjustly imprison, impoverish, and degrade the plaintiff, by force of the writ in the name of Dorion, did, at Boston, on the 18th of the same July, falsely and maliciously imprison the plaintiff in jail, and did then and there detain her for the space of twenty days.

The plaintiff discontinued against Winslow. The other four defendants severally pleaded not guilty, and upon a trial in this Court, a verdict was returned against Dorion and Fuller, and in favor of the other two defendants. Fuller and Dorion moved for a new trial, because the verdict was against the evidence, and because it was against law, inasmuch as the judge before whom the cause was tried, ruled that under the second count the plaintiff might recover against all the defendants, if the evidence showed a malicious prosecution by Dorion. And they moved in arrest of judgment, because the amended count was for a new cause of action ; because neither of the counts was good ; and because the counts were inconsistent with each other.

*S. D. Parker* and *B. Sumner*, for the defendants, cited to the point that the new count ought to have been rejected, *Leland* v. *Marsh*, 16 Mass. R. 389 ; and to the point, that the action could not be sustained against the attorney who commenced the action in the name of Dorion, *Barker* v. *Braham*, 3 Wils. 368 ; *Anonymous*, 1 Mod. 290.

*March 6th*

*W. H. Gardiner* and *Child*, for the plaintiff, cited as to the admissibility of the new count and the sufficiency of the counts, *Stone* v. *Swift*, 4 Pick. 389 ; *Barnard* v. *Whiting*,

Bicknell
*v.*
Dorion.

7 Mass. R. 358 ; *Baker* v. *Sanderson,* 3 Pick. 353 ; 1 Wms's Saund. 230 *a,* note ; to the point, that a new trial could not be granted, as to some of the defendants without being granted as to all, *Sawyer* v. *Merrill,* 10 Pick. 16.

. *Sumner* cited, as to this last point, *Rex* v. *Mawbey,* 6 T R. 622 ; *Price* v. *Harris,* 10 Bingh. 331.

June 22d.

SHAW C. J. delivered the opinion of the Court.   A preliminary objection is taken to the granting of a new trial in this case, on the ground that if the verdict is set aside as to two, against whom there was a verdict, it must also be set aside in respect to the two who had a verdict in their favor, which would be unjust.   This objection is supported on the authority of *Sawyer* v. *Merrill,* 10 Pick. 18.

It is very apparent, that that case is an authority in point, in support of the objection.   As that is the first, and it is believed, the only case in this Commonwealth, in which such a rule has been advanced, and as it is one deeply affecting the practice of the Commonwealth, we have felt disposed to reëxamine it, and to inquire whether it rests upon any foundation of principle, which can sustain it as a useful and equitable rule of practice.   Before doing so, I would premise, that the Court do not consider the decision of that case as resting at all upon the authority of this rule ; but there were reasons entirely satisfactory to the Court, to induce them to refuse the new trial moved for in that case upon its own merits.   Nor was the rule in question considered upon its principle ; the authorities cited were applicable and direct, and in giving the opinion, this rule was suggested as decisive, taking the rule without discussion, from the authorities, as a cumulative reason in addition to those already given in support of the decision on the merits, to which the Court had come.

Upon the authority of text books this rule seems to be well established.   In Bac. Abr. *Trial, L* 1, (so retained in a very recent English edition,) it is stated, if two be defendants and the verdict be in favor of one, the court will not grant a new trial at the instance of the other, because the verdict must, if set aside, be set aside as to all, and it would be unreasonable, &c.   Bull N. P. 326 ; 2 Tidd's Practice, 819; "A new trial cannot be granted in civil cases, at the instance of one

of several defendants." 2 Dunlap's Practice, 681; Graham's Practice (N. Y.) 517; "A new trial cannot be granted at the instance of one of several defendants."

In examining the cases, to ascertain the principle upon which this rule rests, I have not found one where the case has been fully reported, so that we may understand the facts and the principle adopted, where this rule has been made the ground of decision, and a new trial refused by force of it, where it would have been otherwise granted.

The first authority cited in the text books, is that of *Bond v. Spark, Coleman and Hunt,* 12 Mod. 275. Assault and battery, issue joined on *son assault demesne,* two acquitted and one found guilty. The court said a new trial could not be granted, except against all. But the attorney for the two consenting that there should be a new trial against all, a new trial was in fact granted.

The next case cited in Bacon, is *Parker v. Godin,* 2 Strange, 814. The question discussed was, whether in trover, where the verdict for the defendant was right as to part of the articles, and wrong as to others, the court could set it aside in part. This difficulty was avoided by the court, by saying that if this verdict was right on the merits for the defendant before, no doubt the same merits could secure him a verdict again. Then the reporter adds, "But it was agreed on all hands, that if one defendant be acquitted and another found guilty, the defendant can have no new trial." This, it will be perceived, if so said as stated, was purely *obiter dictum.*

Several other cases are cited in Buller's N. P., which are nowhere else reported, and the point only stated. *Collier v. Morris,* M. 1735; *Capt. Crabb's case,* M. 23 Geo.; and *Contra Fern's case,* Hil. 27 & 28, Car. 2. These are all cited and commented on in the case of *Rex v. Mawbey,* 6 T. R. 619, hereafter cited.

One of the cases, cited by one of the New York books of practice in support of the rule, is that of *Oakley v. Steddiford & al.* 3 Johns. R. 253, and seems, so far as it is an authority, to be against the rule. After a default an inquest was taken against two, and one moved to set it aside on an affidavit of merits. The court refused the motion, but it was upon

an undertaking by the plaintiff's attorney to enter a verdict for the defendant in whose behalf the motion was made. Another old case cited in support of the rule is *Berrington's case*, 3 Salk. 362. In trespass and false imprisonment against several, the plaintiff had a verdict, and one moved for a new trial, on the ground that the verdict was against evidence. *Sed per curiam*, this cannot be done, for the court cannot set aside the verdict as to some and not as to others, and to grant a new trial as to all would be a prejudice to those who are duly acquitted.

This case is perhaps an exception to the remark, that in none of the cases had the court decided upon the principle of this rule, but 3 Salk. is perhaps not a very satisfactory authority, and this case is not cited in Bacon's Abr. in support of the rule, but alluded to in argument in some of the later cases.

Such was the state of the authorities when the case of *Rex* v. *Mawbey & al.* 6 T. R. 619, was determined. It was an indictment against three for a misdemeanor; two were acquitted and one convicted, and a motion was made by the one for a new trial; and the court, after great consideration and upon full argument, decided that they had authority to grant it, though upon the merits it was refused.

This would be entirely decisive of the authority of the Court, and would overrule the decisions, upon which the contrary rule had been founded, if there were no distinction in principle between an indictment for a misdemeanor, and a civil action. The counsel in support of the motion, seemed to admit the rule as settled in regard to civil actions and endeavoured to distinguish it from the case of an indictment. They say, after citing the case of *Collier* v. *Morris*, in support of the rule, that it does not seem to apply, " for that was a civil action, and there a plaintiff may have a strict legal interest to maintain the verdict; but that cannot be the case with the crown, which can only be interested in obtaining substantial justice." And they extend the same observation to the other cases cited. This seems to be a very unsatisfactory reason. A plaintiff can have no strict legal right in a verdict, whatever his interest may be, when it is against la-

or evidence, or founded on such defective grounds that no judgment ought to be rendered upon it.

I think the real ground of the rule is shown in the opinion given by Mr. Justice *Lawrence*, and it will appear that it is founded upon technical grounds, wholly inapplicable to our forms and course of practice. He states that from the instant it was admitted, that a new trial might be granted in criminal cases, it seemed to follow as a consequence, that a new trial might be granted in favor of one of several, who was convicted, where on trial several were acquitted, unless the court were entangled in the strict forms of proceeding. Arguments drawn from civil cases, he says, were not applicable, because in those cases there is only one *venire* on the record, and one assessment of damages, but that is not so in criminal cases. And he suggests several methods by which the record may be made conformable to the truth of the case.

This probably discloses the ground of the rule in civil cases. When a verdict is set aside, a *venire facias de novo* is awarded and no notice is taken of the first *venire* and the proceedings under it, and there would be nothing on the record to support the verdict in favor of those who have obtained one. It is not easy to perceive why the same expedients which the learned judge suggests, to meet the difficulty and reach the merits and make the record conform to the truth of the case in criminal cases, might not be adapted to civil actions.

But however this may be in the English courts, and in those courts which conform strictly to common law practice, we have no difficulty here, because, from the earliest times, we have departed from that practice, no *venire* is awarded in making up the record, and the record is made to exhibit a plain narrative and history of the proceedings as they occur.

But the principles adopted by the court in that case apply strongly to the present. Lord *Kenyon* says, if such were the rule, it would bear extremely hard upon particular persons, for then however unjust the verdict against some of the defendants, and though it should turn out beyond all contradiction, that the verdict had been obtained by the grossest perjury, the guilt of the defendants must necessarily stand on record, provided one defendant, perhaps included in the

indictment for the very purpose, were acquitted. And he states in the close, that he has studiously gone out of his way to·express this opinion, lest the public should be misled by a false belief, that manifest injustice must be done, because the forms of law cannot yield to substantial justice. With these views, we can hardly doubt, that had the same learned court been pressed by considerations of justice, common sense, and the plainest principles of equity, they would have found some mode in a civil case, to accomplish this leading object in the administration of justice, consistently· with established forms.

There is one modern case which may perhaps throw some light on this subject. It is that of *Price* v. *Harris & al.* 10 Bingh. 331. This was decided in 1833. It was case against eighteen defendants. The plaintiff discontinued as to one, and one was defaulted. On a trial, all the other defendants had a verdict, and the jury assessed damages against the party defaulted. The plaintiff moved for a new trial against five, as a verdict in regard to them against evidence. The court as to one were of opinion that it was against evidence. Upon certain terms, a new trial was granted, as against him.

But looking at the principle upon which a motion for a new trial is founded, having taken the place of attaint, and in some measure of writs of error and bills of exception, it is founded upon the broadest and most liberal principles of justice. It is for the interest of the community that this power should be as unrestrained as possible, because it affords one of the most simple, direct, prompt and convenient modes of considering, deciding and applying the rules of law to the circumstances of every case which can arise. And if this be true generally, it is true *a fortiori* in this Commonwealth, where in practice a motion for a new trial has become almost the only mode in which questions of law are discussed ; and technical rules, restraining the power of the Court in particular cases, would often operate as a surprise, and work injustice. Nor are we aware that the rule in question has ever been adopted and practised on, in this Commonwealth, except in the case of *Sawyer* v. *Merrill.*

Another consideration strikes us as one of great weight, against the adoption of the rule in question, as adapted to the

law and practice of this State. It has already been suggested, that in all cases of tort, inasmuch as a plaintiff may have a valid judgment against some of the defendants on a verdict against them, in a case where by the same verdict others are acquitted, it is easy for a plaintiff at no risk but that of a bill of costs, to insert the name of a person who he knows is not liable, and who will of course be entitled to a verdict, and then if he happens to get a verdict against some others, however contrary to law and evidence, and however unjust, they can have no remedy by motion for a new trial. But now by recent statutes, a plaintiff may do the same thing in all cases of contract, if he brings an action against several, and some obtain a verdict, he may have a judgment upon it against others; *St.* 1834, *c.* 189 ; contrary to the former established rule of law. So if he charges too few as parties, he may bring in others by summons, without commencing a new action. *St.* 1833, *c.* 194. The plaintiff may therefore, without any danger, sue parties not liable, and with this extraordinary latitude of making parties, as well in actions on contract, as of tort, it would, we think, be attended with most injurious consequences to the correct administration of justice, if those defendants, who, without their agency or will, are joined with others in any civil action, should be deprived of the usual method of having their legal rights examined and settled, by an imperative rule of practice, solely upon the ground that these co-defendants, who are perfect strangers to them, have very rightfully obtained a verdict.

Another obvious consequence of these statutes bearing upon the present subject is, that by reason of the power of introducing new parties, of rendering judgment for some and against others, the old established form of making up a record must be so far altered and amended as to make it conform to these changes ; and it will be the duty of the Court to see that these changes are such as to reach all the changes in the rights and remedies of parties, intended to be made by the statutes, and that the forms of proceeding are made subservient to the security of rights and the purposes of justice. Under these circumstances the Court are all of opinion, that they have the power, where the principles of justice and the

Bicknell
v.
Dorion.

general rules applicable to the grant of new trials require it, to set aside a verdict rendered against some defendants, so far as it affects them, without affecting it where it was in favor of other defendants, that the proposition stated in the case of *Merrill* v. *Sawyer*, was stated without sufficient consideration of all its direct and remote consequences, that it is not consonant to the law and practice of this Commonwealth, would not be useful as a rule of practice, and cannot be supported.

Upon the merits of this case, the Court are all of opinion, that the verdict cannot be supported. The case embraces so great a variety of points and considerations, that I fear it will not be easy, in a brief mode, to state the grounds upon which this opinion is founded, and I shall confine myself to a few of the most prominent.

It is necessary to consider with some care the counts, and the manner in which the *gravamen* is stated, to see whether any good cause of action is stated. In doing this, I shall consider the second count first, being the one filed by way of amendment, after the cause was in this Court. One ground of the motion is, that this count was admitted by way of amendment, though objected to, and that it ought to have been rejected, because it is inconsistent with the first count, sets forth a different cause of action, and a cause of action against one of the defendants only and for other reasons specified in the motion on file.

This count charges no conspiracy or combination; it nowhere alleges, that the trover suit was commenced without reasonable or probable cause. It alleges a suing out and prosecution of the writ in the name and at the suit of John B. Dorion, by all the defendants, that the plaintiff was arrested with circumstances of aggravation, that the suit was entered, continued, and, at a subsequent term, nonsuited, and the plaintiff being wholly innocent of the wrong in said action alleged, was duly discharged therefrom and the said action was ended and determined.

So far, it is very clear, that no cause of action is charged; and all the circumstances insisted on by way of aggravation, cannot avail the plaintiff, if no legal cause of action is alleged. For aught that appears in this declaration, there might be the

Bicknell
v.
Dorion.

strongest and most pregnant grounds of probable cause, and yet the averment may be true that the plaintiff was innocent of the wrong charged, that she was not liable to the action of trover, and therefore the suit rightfully terminated in her favor. The same thing would be true if the case had been reserved on questions of law, under the usual agreement to become nonsuit, according to the opinion of the court on points reserved, after the most full and solemn argument. It would still be true that the plaintiff was innocent of the wrong charged, that the plaintiff in the trover suit had become nonsuit, and that the cause was at an end.

But the declaration further alleges, that while she was so imprisoned, certain depositions were taken, from which it became known and was clearly manifested to the defendants, that there was no lawful and probable cause of action against said Bicknell, on behalf of said Dorion, yet the defendants, by force of said writ in the name of said Dorion, one of the defendants, did then and there falsely and maliciously imprison the plaintiff and detain her twenty days.

It is clear, that the epithets *falsely combining*, &c., do not alter the character of the material and traversable fact averred, and if this does not furnish a cause of action, the qualifying epithets of malice will not make it actionable. The question then comes to this ; a suit is rightfully commenced by four persons, in the name of one of them, (whether this averment is supported, and the effect of it, I shall allude to afterwards,) upon reasonable and probable cause, and entered in Court, and in the course of prosecution, depositions are taken which show that the defendant has a good defence, and that the plaintiff has no reasonable cause, and still the suit is not discontinued or the defendant discharged out of custody ; does that afford a cause of action against the four ? We think it does not. The act of continuing the plaintiff in custody, or to speak perhaps more precisely, the neglect to discharge her out of custody on the knowledge of this evidence, is that of the party alone, who was plaintiff in the suit. The averment that they detained her, must be taken according to the subject matter. It was by force of the same writ ; no new act was done, no new orders given ; the parties were passive,

and did not interpose to do any thing.    Further, we are bound
to take notice of the known rules and principles of law.    The
defendants, other than Dorion, had no legal authority or power
to discharge the plaintiff out of custody, and had they given
orders to that effect their orders would have been inoperative
and void.    How far the party plaintiff, himself, may be liable,
who has upon probable cause commenced a suit, but afterwards
finds in the progress of the same, that he has no cause of ac-
tion, in an action for a malicious prosecution, for not discharg-
ing the party sued out of custody, of which we give no opinion,
it seems to us clear, that those who advised and assisted him
in the outset, when he had probable cause, cannot be respon-
sible for his act or default subsequently, in a case where no
act or advice or assistance is alleged to have been afforded
by them.

This goes upon the supposition most favorable for the
plaintiff, that the plaintiff can maintain an action against sev-
eral, for a malicious civil prosecution, who were not parties
plaintiff in the suit charged to be groundless and malicious,
without expressly charging and proving a conspiracy to bring
and prosecute an action, which they know and understand to
be groundless, in order to detain the party sued in custody, to
hold his property, or to accomplish some other indirect and
sinister purpose.    I have met with no case in which such a
suit has been maintained, and I have great doubts whether upon
principle such an action can be supported, and I mention this,
lest it should be inferred from the foregoing reasoning, that if
the original suit had been without probable cause, this action
could be maintained, against the three defendants to this suit,
who were not parties to the original action, and where con-
spiracy to bring a groundless action is not charged.    But the
ground taken here is, that supposing such an action could be
maintained, still as it is not alleged in this count, that the ori-
ginal suit was without probable cause or malicious, the defend-
ants cannot be liable upon an averment, which is in substance,
that the plaintiff in that suit, did not discontinue it or dis-
charge the plaintiff after the disclosure of evidence showing
that the writ could not be maintained.

2.  The question then is, whether this action can be main-

Bicknell<br>
*v.*<br>
Dorion.

tained on the first count, and whether the evidence sustained it.

This count charges that the defendants, at &c., by a conspiracy between them, there first thereof had, to aggrieve, impoverish and oppress, injure and disgrace the plaintiff and to cause her to be arrested at the suit of said John, prosecuted &c., alleging the issuing the writ, the arrest, the entry of the action, the nonsuit and termination of the suit, and then avers that the defendants prosecuted the said suit, &c., without having any lawful or probable cause for prosecuting said writ and the imprisonment of the plaintiff, but were moved by malice &c., with the usual aggravations.

It may be considered doubtful whether this count charges conspiracy technically, or to speak more accurately, whether the conspiracy is not put in by way of aggravation and not as the *gist* of the action. In pursuance of this suggestion, and as a test of the nature of the action, it seems now well settled, that notwithstanding this averment of conspiracy, the action may be maintained against one alone. The matter is discussed, the authorities cited, and the reasons given, in 1 Wms's Saund. 230. The consequence is, that in the present case, if there had been a verdict against one only, either the client or the attorney in the suit alleged to be groundless, there might have been judgment. This would present the question, whether an action could be maintained against an attorney alone, for bringing a suit which is groundless and without probable cause ; and it would be extremely difficult to maintain such a prosecution upon the authorities. Anon. 1 Mod. 209.

But supposing this to be well charged as a conspiracy, the question recurs, whether the evidence is such as will support the action.

The considerations advanced as applicable to the present case, are to be regarded as applying solely to an action for a malicious prosecution of a civil action, an action at the suit of an individual. Very different considerations apply to the case of persons who institute a prosecution against another, or prefer a complaint against another, on a charge of felony or other crime.

Bicknell
*v.*
Dorion.

But we think in general it is true, that an action cannot be maintained against an attorney, on the ground of his instrumentality in bringing a civil action, against the plaintiff, unless where he has commenced such suit, without the authority of the party in whose name he sues, or, unless there be a conspiracy to bring a groundless suit, knowing and understanding it to be groundless, and without any intent or expectation of maintaining the suit.

The former case is precluded here not only by the whole course of the proof, but by the form of the action. The attorney and client in the action complained of, are both made defendants in this suit; of course, therefore, by the plaintiff's own showing, the suit was commenced by the attorney upon the retainer and by the authority of the client. The case of bringing the suit without the authority of the plaintiff in that suit, is, therefore, out of the question.

Upon the other ground, I am not prepared to say, that if a person applies to an attorney wishing to have a groundless suit commenced, for the purpose of detaining the property or person of another under the forms of legal process, and the attorney yields to such a request, that they would not render themselves liable to an action at the suit of the party thus injured. It would be very different from the case where the client requests an action to be brought, on his responsibility, however groundless the attorney himself may think it to be, and though he explicitly declares to the client, that he cannot maintain the action. "Knowing," "believing," or "supposing" it groundless, are only expressions indicating different degrees of the attorney's belief; the party may have grounds for proceeding, not known to the attorney, and he has a right to judge for himself. Take the case put in 1 Mod. 209; the attorney himself drew the release, and therefore knew that the client had no cause of action. He may know. that that release was obtained by gross fraud, and therefore no bar to an action.

In order therefore to charge an attorney upon this ground, it must not only appear that there was an agreement to bring an action which was in fact groundless, and which the attorney supposed to be groundless, but that it was agreed to

bring an action understood by both parties to be groundless and brought as such. Upon a review of the evidence in the present case, it falls entirely short of proving such a case.

3. But further, supposing this an ordinary case of an action for having commenced a suit malicious and groundless, we are of opinion, upon a review of the evidence, that there was strong probable cause, and that the verdict is in this respect decidedly against the evidence, and for this cause alone there ought to be a new trial.